# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

CAMERON McGLOTHIN,

                Petitioner,           :    Case No. 1:09-cv-48

   - vs -                           District Judge Michael R. Barrett
                                   Magistrate Judge Michael R. Merz

WANZA JACKSON, Warden,

                          :

                Respondent.

# REPORT AND RECOMMENDATIONS

This is a habeas corpus case brought pursuant to 28 U.S.C. § 2254 by Cameron McGlothin to obtain relief from his conviction and life sentence in the Hamilton County Common Pleas Court on charges of murder, having weapons while under a disability, and aggravated robbery and robbery with firearm specifications (Petition, Doc. No. 1, PageID 1, ¶¶ 1, 3, 5). McGlothin, represented by counsel, pleads the following Grounds for Relief:

> **Ground One**: Petitioner was denied Due Process of Law pursuant to the Fourteenth Amendment of the United States Constitution and deprived of fundamental fairness in the trial process when the trial court refused to grant a new trial, or hold a hearing, after the true killer came forward with an affidavit in which he exonerated Petitioner.
>
> **Supporting Facts:** The post-trial affidavit of Kevin Short (the true killer) constituted newly discovered evidence entitling McGlothin to a new trial. McGlothin had called Short as a witness to testify at trial on his behalf. However, the prosecutor had intimidated Short prior to him giving his testimony, and as a result, Short invoked his Fifth Amendment privilege against self-incrimination and refused to testify. After the trial, Short provided an affidavit in which he admitted he was the shooter and that McGlothin had nothing to do with the crime. Based on this

1

McGlothin moved for a new trial. The trial court refused to grant McGlothin a new trial.

**Ground Two:** Petitioner's Fifth, Sixth, and Fourteenth Amendment rights were violated when the trial court permitted the prosecutor to amend the indictment.

**Supporting Facts:** Prior to trial the court permitted the prosecutor to change Petitioner's status from principal offender to complicitor; to change the underlying felony for the offense of felony murder from felonious assault to aggravated robbery; and to change the date of the offense after the trial had concluded.

**Ground Three:** Petitioner was denied due process of law in violation of the Fourteenth Amendment when the prosecutor engaged in numerous instances of prosecutorial misconduct.

**Supporting Facts:** The prosecutor improperly intimidated a defense witness, who as a result of this improper conduct refused to testify and provide exculpatory evidence for Petitioner; and the prosecutor made improper comments in closing argument that were not based on evidence, expressed his opinion of the veracity of Petitioner, including calling Petitioner "a liar."

**Ground Four:** The indictment is void as it relates to the charges of Murder, Aggravated Robbery, and Robbery.

**Supporting Facts**: Petitioner was deprived of his constitutional right to due process and his constitutional right to stand trial only upon an indictment issued by a grand jury when he was convicted and sentenced based upon an indictment that was void and structurally deficient due to the fact that it did not allege all the essential elements of the offenses of Murder, Aggravated Robbery, and Robbery.

A. The indictment for Aggravated Robbery and Robbery failed to allege the culpable mental state that was necessary to support a lawful conviction.

B. The Murder indictment failed to allege the culpable mental state necessary for the underlying felony offense to the felony murder charge necessary to support a lawful conviction.

**Ground Five:** Petitioner's Fifth and Fourteenth Amendment rights prohibiting Double Jeopardy were violated when the trial

court sentenced him on both the Aggravated Robbery and Robbery charges.

**Ground Six:** Petitioner is entitled to federal habeas corpus relief as he has presented evidence that establishes his "actual innocence."

(Petition, Doc. No. 1.)

**Procedural History**

McGlothin was indicted in 2005 by the Hamilton County Grand Jury on charges of murder, having weapons while under disability, aggravated robbery, and robbery with the first, third, and fourth counts having appended firearm specifications. He was convicted on all counts. After denial of his motion for new trial, he appealed to the First District Court of Appeals which affirmed the conviction. *State v. McGlothin*, 2007 Ohio 4707, 2007 Ohio App. LEXIS 4227 (1st Dist. Sept. 14, 2007). The Ohio Supreme Court declined jurisdiction over a subsequent appeal. *State v. McGlothin,* 116 Ohio St. 3d 1480 (2008).

McGlothin filed a motion to vacate raising various claims which was denied by the trial court. The court of appeals affirmed, holding the trial court had properly recast the motion as a petition for post-conviction relief under Ohio Revised Code § 2953.21, but lacked jurisdiction to consider the merits of McGlothin's claims because the motion was untimely. *State v. McGlothin*, 2009 Ohio App. LEXIS 5919 (1st Dist. Oct. 28, 2009). McGlothin took no appeal to the Ohio Supreme Court.

McGlothin filed an Application for Reopening under Ohio R. App. P. 26(B) on April 1, 2009. The court of appeals granted relief on the first assignment of error and remanded for resentencing regarding the aggravated robbery and robbery convictions. After resentencing,

3

McGlothin again appealed, but the new sentence was affirmed and the Ohio Supreme Court declined further review. Both the court of appeals and the Ohio Supreme Court rejected a second Application to Reopen.

The Petition was filed here January 22, 2009 (Doc. No. 1), but stayed to allow exhaustion of state court remedies (Doc. No. 9). After exhaustion the Court reopened the case and ordered the Warden to file an answer (Doc. No. 14). The Warden did so on March 7, 2013 (Doc. No. 17). Judge Bowman also set a date for a reply of twenty-one days after the Return of Writ (Order, Doc. No. 14, PageID 602). However, that period has expired and no reply has been filed.

# Analysis

**Ground One:  Denial of a New Trial**

In his First Ground for Relief, McGlothin claims he was denied the due process of law guaranteed by the Fourteenth Amendment when the trial court refused to grant him a new trial. McGlothin's claim relating to denial of a new trial was raised as his fourth assignment of error on direct appeal and the First District decided it as follows:

> **Motion for New Trial**
>
> [*P35] McGlothin's fourth assignment of error is that the trial court erred when it overruled his motion for a new trial. Prior to the sentencing hearing, McGlothin filed a motion for a new trial or a judgment of acquittal. Attached to the motion was Short's affidavit in which Short stated that he had acted alone, that McGlothin had not encouraged him to rob Chastain, and that Short had been told to lie by Patterson. After a hearing, the trial court denied the motion.

4

**[\*P36]** Under Crim.R. 33(A)(6), the trial court may grant a new trial "[w]hen new evidence material to the defense is discovered, which the defendant could not with reasonable diligence have discovered and produced at trial." We review the trial court's denial of a motion for a new trial based on newly discovered evidence under an abuse-of-discretion standard. *State v. Schiebel* (1990), 55 Ohio St. 3d 71, 564 N.E. 2d 54, paragraph one of the syllabus.

**[\*P37]** "To warrant the granting of a motion for a new trial in a criminal case, based on the ground of newly discovered evidence, it must be shown that the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence."*State v. Petro* (1947), 148 Ohio St. 505, 76 N.E. 2d 370, syllabus.

**[\*P38]** Courts have split on whether the newly available testimony of a codefendant who has previously invoked his Fifth Amendment privilege against self-incrimination qualifies as "newly discovered evidence" for purposes of determining whether a new trial should be granted. Although never faced squarely with the issue in terms of a motion for a new trial, this court has considered whether an affidavit of a codefendant offered after a trial in which a codefendant had invoked his Fifth Amendment privilege against self-incrimination was sufficient for the defendant to obtain leave to file a delayed motion for a new trial under Crim.R. 33(B). Under that provision, if a defendant does not file a motion for a new trial within 120 days of the jury's verdict, he must seek leave to file a motion for a new trial. To obtain leave, the defendant must demonstrate clearly and convincingly that he was unavoidably prevented from discovering the evidence within the 120-day period. Crim. R. 33(B). In *State v. Mathis,* (1999), 134 Ohio App. 3d 77, 730 N.E. 2d 410, we concluded that where an affiant had refused to testify during the defendant's trial, the defendant had not demonstrated clearly and convincingly that he had been unavoidably prevented from discovering the evidence offered in the affidavit within the allotted time.

**[\*P39]** Less than five years later, we faced a similar issue in *State v. Condon,* 157 Ohio App. 3d 26, 2004 Ohio 2031, 808 N.E. 2d 912. In that case, Condon sought leave to file a motion for a new trial a year and a half after his convictions for eight counts of gross abuse of a corpse. Included with his motion was an affidavit from

his codefendant, who had invoked his Fifth Amendment rights during Condon's criminal trial. The affidavit, which had been filed in a civil case, exculpated Condon from the abuse of one of the corpses. This court concluded that the trial court had abused its discretion when it denied Condon's motion for leave to a file a delayed motion based on the affidavit and overruled *Mathis* to the extent that it held otherwise. *Condon*, *supra*, at P20.

[*P40] In arriving at our conclusion, this court cited favorably a decision from the First Circuit Court of Appeals in which the court had held that "newly discovered" in the corresponding federal rule, Fed.R.Crim.P. 33, encompassed newly available evidence. *U.S. v. Montilla-Rivera* (C.A. 1, 1997), 115 F.3d 1060, 1066. (In *Condon*, the court incorrectly referred to the deciding court in *Montilla-Rivera* as the 11th Circuit Court of Appeals. See, also, State v. Barber (1982), 3 Ohio App. 3d 445, 3 Ohio B. 524, 445 N.E. 2d 1146.) In concluding that Condon had met his burden of showing that he had been unavoidably prevented from discovering the evidence, this court acknowledged that equating "newly discovered" with "newly available" was a minority view. *Condon, supra*, at P18.

[*P41] The majority view, as explained by the Third Circuit Court of Appeals in *United States v. Jasin,* is that, given the clear language of Fed.R.Crim.P. 33, " 'newly available evidence' is not synonymous with 'newly discovered evidence.' " (C.A. 3, 2002), 280 F.3d 255, 368. *See, also, United States v. Glover* (C.A. 6 1994), 21 F.3d 133; *United States v. Freeman* (C.A. 5, 1996), 77 F.3d 812; *United States v. Theodosopoulos* (C.A.7, 1995), 48 F.3d 1438. To consider the testimony of a codefendant after he has been sentenced as newly discovered evidence "would encourage perjury to allow a new trial once codefendants have determined that testifying is no longer harmful to themselves." *United States v. Reyes-Alvarado* (C.A. 9 1992), 963 F.2d 1184, 1188. We agree with the reasoning of the Third Circuit that the majority view "establish[es] a straightforward bright-line rule, [and] is anchored in the plain meaning of the text." *Jasin*, supra, at 368. Accordingly, we adopt the majority view. To the extent that *State v. Condon* held otherwise, we overrule it.

[*P42] In the case before us, application of the majority view leads us to conclude that the evidence offered in Short's affidavit was not newly discovered. McGlothin's attorneys knew about the testimony during the trial. That is precisely why they called Short to testify at McGlothin's trial. McGlothin was unable to meet the

> second prong of *Petro*--that the evidence had been discovered
> since the trial. The trial court did not abuse its discretion in
> denying the motion. We, therefore, overrule the fourth assignment
> of error and affirm the trial court's judgment.

*State v. McGlothin*, 2007 Ohio 4707, 2007 Ohio App. LEXIS 4227 (1st Dist. Sept. 14, 2007).

The First District Court of Appeals did not believe it was deciding a federal constitutional question with this fourth assignment of error. Instead, it was interpreting Ohio Rule Crim. P. 33. To the extent it cited federal precedent, it was not for any constitutional rulings by those courts as to new trial motions, but for their interpretation of the parallel language which appears in Fed. R. Crim. P. 33. McGlothin had not presented his motion for new trial to the trial court as having any basis in federal constitutional law. (See Motion for New Trial, Doc. No. 17-1, PageID 663-69.) In his brief on appeal, he framed the assignment of error as an abuse of discretion of the trial court. (See Brief, Doc. No. 17-1, PageID 700.) No mention is made at all of any constitutional right to new trial; the sole citation is to *State v. Condon, supra*.

Thus to the extent McGlothin now makes a federal claim, he has procedurally defaulted that claim by failing to fairly present it to the state courts. To preserve a federal constitutional claim for presentation in habeas corpus, the claim must be "fairly presented" to the state courts in a way which provides them with an opportunity to remedy the asserted constitutional violation, including presenting both the legal and factual basis of the claim. *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir.), *cert. denied,* 509 U.S. 907 (1993), overruled in part on other grounds by *Thompson v. Keohane,* 516 U.S. 99 (1995); *Riggins v. McMackin,* 935 F.2d 790, 792 (6th Cir. 1991). The claim must be fairly presented at every stage of the state appellate process. *Wagner v. Smith,* 581 F.3d 410, 418 (6th Cir. 2009).

If a petitioner's claims in federal habeas rest on different theories than those presented to

the state courts, they are procedurally defaulted.  *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Lorraine v. Coyle*, 291 F.3d 416, 425 (6th Cir. 2002), *citing Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *Lott v. Coyle*, 261 F.3d 594, 607, 619 (6th Cir. 2001)("relatedness" of a claim will not save it).  The claim made here is that it was a denial of due process under the Fourteenth Amendment not to grant a new trial; the claim made to the Ohio courts is that it was an abuse of discretion not to grant a new trial, a completely different theory.  A state prisoner ordinarily does not 'fairly present' a federal claim to a state court if that court must read beyond a petition, a brief, or similar papers to find material that will alert it to the presence of such a claim. *Baldwin v. Reese*, 541 U.S. 27 (2004).

When a defendant does so little to present his claim that it has not been fairly presented, then the presumption under *Harrington v. Richter* that the state court decided the claim on the merits is "fully rebutted."  *Johnson v. Williams*, 568 U.S. ___, 133 S. Ct. 1088, *; 185 L. Ed. 2d 105 (2013).  Thus this Court does not infer a decision on the merits of Ground One by the Ohio courts.  Instead, this federal constitutional claim was never presented to those courts and should be dismissed as procedurally defaulted.

**Ground Two:  Amendment of the Indictment**

In his Second Ground for Relief, McGlothin contends he was denied fair notice of the charges against him when the trial court permitted amendments of the Indictment before trial and again after closing argument (Memorandum in Support, Doc. No. 1-1, PageID 28).  This claim was raised as the first assignment of error on direct appeal and the First District decided it as follows:

[*P7]  In his first assignment of error, McGlothin asserts that the trial court erred when it allowed the state to amend the indictment.

[*P8]  Before the trial started, the state moved to amend the indictment to reflect that McGlothin was a complicitor, rather than the principal, in the crimes and to change the felony underlying the murder from felonious assault to aggravated robbery. After closing arguments, the state again moved to amend the indictment to change the date of the offenses from August 21 to August 22. The court granted both requests to amend the indictment.

[*P9]  "The court may at any time before, during, or after a trial amend the indictment * * *, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged."  Crim. R. 7(D). The amendments of the indictment in this case did not change the name or the identity of any of the crimes. Because the substance of the indictment was changed by the amendments, McGlothin had the right to request that the jury be discharged or that a continuance be granted. See, also, *State v. O'Brien* (1987), 30 Ohio St. 3d 122, 30 Ohio B. 436, 508 N.E. 2d 144.  But he made no such request. And even if he had requested the discharge of the jury or a continuance, it would not have been error to deny the request, as McGlothin would not have been able to prove that he was misled or prejudiced by the amendments. The first assignment of error is overruled.

*State v. McGlothin, supra.*

On the basis of this decision, Respondent asserts McGlothin has procedurally defaulted his Second Ground for Relief (Answer, Doc. No. 17, PageID 619).  The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir.); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
>
> . . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). Here the First District applied Ohio's contemporaneous objection rule to McGlothin's Second Assignment of Error. That rule — that parties must preserve errors for appeal by calling them to the attention of the trial court at a time when the error could have been avoided or corrected, set forth in *State v. Glaros*, 170 Ohio St. 471 (1960), paragraph one of the syllabus; *see also State v. Mason*, 82 Ohio St. 3d 144, 162 (1998) — is an adequate and independent state ground of decision. *Wogenstahl v. Mitchell*, 668 F.3d 307, 334 (6th Cir. 2012),*citing Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006); *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007); *Biros v. Bagley,* 422 F.3d 379, 387 (6th Cir. 2005); *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003), *citing Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), *citing Engle v. Isaac,* 456 U.S. 107, 124-29 (1982). *See also Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir.), *cert. denied*, 131 S. Ct. 185 (2010).

McGlothin offers no potentially excusing cause and prejudice in his Memorandum in

Support and has not filed a reply, which could have included a response. As will be discussed below with respect to Ground Six, he has also not made a persuasive showing of actual innocence. The Second Ground for Relief should be dismissed with prejudice as procedurally defaulted.

**Ground Three:  Prosecutorial Misconduct**

In his Third Ground for Relief, McGlothin asserts he was deprived of due process of law by the misconduct of the prosecutor. This was McGlothin's third assignment of error on direct appeal and the Fist District decided it as follows:

> [*P17] The third assignment of error is that McGlothin was denied his due-process rights because the prosecutor engaged in conduct that deprived McGlothin of a fair trial.
>
> [*P18] McGlothin called Short to testify on his behalf. Before taking the stand in front of the jury, Short asserted his right not to incriminate himself and refused to testify. McGlothin claimed that Short was refusing to testify because he had been intimidated by the assistant prosecutor. Prior to calling Short, McGlothin's attorneys informed the court that the assistant prosecutor had told Short's counsel that if Short testified, he would receive no consideration in the pending case against him. The trial court questioned Short's counsel to understand what had happened. Short's counsel stated that his understanding was that "[the assistant prosecutor] was certainly not going to recommend any deal if [Short] testified, not that he couldn't testify." He also told the court that the assistant prosecutor had not advised him that Short should refuse to testify. It is clear from the record that the assistant prosecutor was referring to case consideration that had been offered to Short had he testified on behalf of the state. But because the assistant prosecutor did not believe Short to be credible, he had decided not to call Short as a witness. The assistant prosecutor's statements to Short's counsel made clear that any previously offered consideration was off the table. And Short's counsel stated that, aside from the conversation that he had had with the assistant prosecutor, he did not believe that it was in

Short's best interest to testify. We conclude that the record does not support McGlothin's assertion that Short had been intimidated from testifying by the assistant prosecutor.

**[\*P19]** McGlothin also asserts that the assistant prosecutor engaged in misconduct during closing arguments by vouching for the credibility of the state's witnesses and by calling McGlothin a liar. We must review the assistant prosecutor's statements to determine "whether [they] were improper and, if so, whether they prejudicially affected substantial rights of the defendant." *State v. Smith* (1984), 14 Ohio St. 3d 13, 14, 14 Ohio B. 317, 470 N.E. 2d 883.

**[\*P20]** During closing argument, the prosecutor and defense counsel are not permitted to express their personal beliefs as to a witness's credibility, but they are "free to comment on what the evidence has shown and on the reasonable inferences that might be drawn from the evidence." *State v. Bevins,* 1st Dist. No. C-0050754, 2006 Ohio 6974 at P27.

**[\*P21]** McGlothin's claim that the assistant prosecutor improperly vouched for the credibility of the state's witnesses is not borne out by the record. During closing argument, McGlothin's counsel repeatedly stated that Ridley, Akins, and Patterson were liars. In the second part of his closing argument, the prosecutor commented on facts in evidence in response to the attacks on the credibility of the state's witnesses. Such argument was not improper. *Id.* at P29.

*State v. McGlothin, supra.*

In contrast to his state court argument on the First Assignment of Error, McGlothin did make his argument on this assignment in terms of due process (Brief, Doc. No. 17-1, PageID 698). Thus the Third Ground for Relief was fairly presented to the state courts as a federal constitutional claim. Although the First District cited state court precedent, *State v. Smith*, 14 Ohio St. 3d 13 (1984), that case was decided on federal constitutional principles, the Ohio Supreme Court citing the leading case on prosecutorial misconduct, *Berger v. United States*, 295 U.S. 78 (1935). *Berger* is also the principal citation of McGlothin in his Memorandum in Support (Doc. No. 1-1, PageID 30).

12

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court.  28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 785 (2011); *Brown v. Payton*, 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).

On habeas corpus review, the standard to be applied to claims of prosecutorial misconduct is whether the conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process," *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *Darden v. Wainwright,* 477 U.S. 168, 181 (1986), *quoting DeChrsitoforo, supra.*; *Wogenstahl v. Mitchell*, 668 F.3d 307, 327-328 (6th Cir.  2012), *citing Smith v. Mitchell,* 567 F.3d 246, 265 (6th Cir. 2009); *Bates v. Bell*, 402 F.3d 635, 640-41 (6th Cir. 2005)(citations omitted); *Kincade v. Sparkman*, 175 F.3d 444, 445-46 (6th Cir. 1999)(citations omitted), or whether it was "so egregious as to render the entire trial fundamentally unfair." *Cook v. Bordenkircher*, 602 F.2d 117, 119 (6th Cir. 1979)(citations omitted); *accord Summitt v. Bordenkircher*, 608 F.2d 247, 253 (6th Cir. 1979), *aff'd sub nom*, *Watkins v. Sowders*, 449 U.S. 341 (1981)(citation omitted); *Stumbo v. Seabold*, 704 F.2d 910, 911 (6th Cir. 1983)(citation omitted).  The court must first decide whether the complained-of conduct was in fact improper. *Frazier v. Huffman*, 343 F.3d 780 (6th Cir. 2003), *citing United States v. Carter*, 236 F.3d 777, 783 (6th Cir. 2001).  A four-factor test is then applicable to any conduct the Court finds inappropriate: "(1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and whether the evidence against the defendant was strong."

*Id.* The court must decide whether the prosecutor's statement likely had a bearing on the outcome of the trial in light of the strength of the competent proof of guilt. *Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982). The court must examine the fairness of the trial, not the culpability of the prosecutor. *Serra v. Michigan Department of Corrections,* 4 F.3d 1348, 1355 (6th Cir. 1993),*quoting Smith v. Phillips*, 455 U.S. 209, 219 (1982). In *Serra*, the Sixth Circuit identified factors to be weighed in considering prosecutorial misconduct:

> In every case, we consider the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury, and the strength of the competent proof to establish the guilt of the accused.

4 F.3d at 1355-56, *quoting Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982)(citation omitted). The misconduct must be so gross as probably to prejudice the defendant. *Prichett v. Pitcher*, 117 F.3d 959, 964 (6th Cir.), *cert. denied*, 522 U.S. 1001 (1997)(citation omitted); *United States v. Ashworth,* 836 F.2d 260, 267 (6th Cir. 1988). Claims of prosecutorial misconduct are reviewed deferentially on habeas review. *Thompkins v. Berghuis,* 547 F.3d 572 (6th Cir. 2008), rev'd on other grounds, 560 U.S. 370 (2010), *citing Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004), *cert. denied,* 544 U.S. 921 (2005).

In *Parker v. Matthews*, 567 U.S. ___, 132 S. Ct. 2148, 183 L.Ed. 2d 32 (2012)(per curiam), the Supreme Court summarily reversed the Sixth Circuit, *Matthews v. Parker*, 651 F.3d 489 (6th Cir. 2011), noting that the "*Darden* standard is a very general one, leaving [state] courts 'more leeway . . . in reaching outcomes in case-by-case determinations.'" *Matthews* at *18, *quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

The record shows that Short's decision to invoke his Fifth Amendment privilege was based on advice from his attorney and not on "intimidation" by the prosecutor. A thorough

14

record was made on the matter by the trial court, and the court of appeals' interpretation of what happened does not disclose any improper conduct by the prosecutor.

The First District found that the record did not support McGlothin's claim that the prosecutor called him a liar in closing argument. There are two places in the trial transcript to which McGlothin's counsel points to prove this claim. At trial transcript page 1039 (Doc. No. 18-5, PageID 1039-40), the prosecutor is pointing out direct contradictions in statements McGlothin made to police – at one point he says he does not use drugs and at another he states that Tony is his drug dealer. At trial transcript page 1055, the prosecutor is again pointing out inconsistencies in McGlothin's statements to the police. The First District's conclusion that this was fair comment on the evidence is not an objectively unreasonable application of Supreme Court precedent.

McGlothin's Third Ground for Relief should be dismissed with prejudice because the First District's decision on the merits is entitled to deference under 28 U.S.C. § 2254(d).


**Ground Four:  Void Indictment**


In his Fourth Ground for Relief, McGlothin asserts his conviction is unconstitutional because he was tried on a structurally deficient and void indictment which did not allege the requisite *mens rea* for aggravated robbery and robbery or any *mens rea* for the underlying felony for the murder charge.

In his Memorandum in Support filed January 22, 2009, McGlothin argued that, because the omission of the *mens rea* elements of the offenses was a structural error, it could be raised at any time and the absence of these elements deprived him of his right to grand jury indictment

under the Fifth Amendment (Memorandum, Doc. No. 1-1, PageID 33). He relies principally on *State v. Colon*, 118 Ohio St. 3d 26 (2008).

The Fifth Amendment guarantee of grand jury indictment has never been incorporated into the Fourteenth Amendment Due Process Clause by the Supreme Court. Therefore the Grand Jury Clause of the Fifth Amendment is not applicable to the States. *Hurtado v. California*, 110 U.S. 516 (1884); *Branzburg v. Hayes,* 408 U.S. 665, 687-88 n. 25 (1972); *Gerstein v. Pugh,* 420 U.S. 103 (1975); *Williams v. Haviland*, 467 F.3d 527 (6th Cir. 2006)(*Apprendi* does not change this result). Furthermore, as Respondent notes, the Ohio Supreme Court has overruled *Colon* in its entirety. *State v. Horner*, 126 Ohio St. 3d 466, 473 (2010).

Assuming without deciding that McGlothin properly preserve this claim for review in this Court,[1] it is without merit and should be dismissed with prejudice for failure to state a claim upon which habeas corpus relief can be granted.

**Ground Five: Double Jeopardy**

In his Fifth Ground for Relief, McGlothin asserts his Fifth Amendment protection against double jeopardy was violated when the trial court sentenced him on both the robbery and aggravated robbery charges.

As Respondent notes, this claim is moot because McGlothin successfully argued this claim to the Ohio courts and the conviction and sentence for robbery were vacated after the robbery conviction was merged with the aggravated robbery conviction under Ohio Revised Code § 2941.25.

---

[1] Respondent asserts the claim is procedurally defaulted.

This Ground for Relief should therefore be dismissed with prejudice as moot.

**Ground Six: Actual Innocence**

In his Sixth Ground for Relief McGlothin presents what has come to be known as a stand-alone actual innocence claim, to wit, a claim that it would be unconstitutional to punish him because he is actually innocent of the crime of murder for which he is incarcerated. Case law in the Sixth Circuit establishes that the Supreme Court of the United States has never recognized a free-standing or substantive actual innocence claim. *Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007), *citing Zuern v. Tate*, 336 F.3d 478, 482, n.1 (6th Cir. 2003), and *Staley v. Jones*, 239 F.3d 769, 780, n.12 (6th Cir. 2001). The Supreme Court has twice suggested that a "truly persuasive demonstration" of actual innocence would render a petitioner's execution unconstitutional. *Herrera v Collins,* 506 U.S. 390, 417 (1993); *House v. Bell*, 547 U.S. 518 (2006). But the Court has never held that actual innocence bars execution.

The Supreme Court has recognized that sufficient evidence of actual innocence can act to excuse a procedural default on another constitutional claim. In *Murray v. Carrier,* 477 U.S. 478 (1986), the Supreme Court recognized an exception to the cause and prejudice requirement for a petitioner who could demonstrate actual innocence. However, actual innocence means factual innocence as compared with legal innocence. *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986). "A prototypical example of actual innocence in a colloquial sense is the case where the State has convicted the wrong person of the crime." *Sawyer v. Whitley,* 505 U.S. 333 (1992). To come within the actual innocence exception to the required showing of cause and prejudice with respect to an abuse of the writ, a habeas petitioner or § 2255 movant must show that a

constitutional violation has probably resulted in the conviction of one who is actually innocent.

That is, the petitioner must show that it is more likely than not that no reasonable juror would

have found him guilty beyond a reasonable doubt' in the light of the new evidence he or she is

tendering.    In reaching this conclusion, the habeas court may need to make credibility

determinations. *Schlup v. Delo*, 513 U.S. 298 (1995), adopting standard from *Murray v. Carrier*,

477 U.S. 478 (1986).  In *House v. Bell,* 547 U.S. 518 (2006), the Supreme Court applied *Schlup*

and found that petitioner produced sufficient evidence to pass through the gateway.  The Sixth

Circuit applies *Schlup* to determine whether a habeas applicant has made a cognizable claim of

actual innocence, *McCray v. Vasbinder*, 499 F.3d 568, 571 (6th Cir. 2007).

> [I]f a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup v. Delo*, 513 U.S. 298, 316 (1995)." Thus, the threshold inquiry is whether "new facts raise[] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id.* at 317. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 140 L. Ed. 2d 828, 118 S. Ct. 1604 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Id.* at 321.

*Souter v. Jones,* 395 F.3d 577, 590 (6th Cir. 2005).

McGlothin's proffered evidence of actual innocence is the Affidavit of co-defendant

Kevin Short which was presented to the Ohio courts as the basis for a new trial.  The Motion for

New Trial was filed February 6, 2006 (Doc. 1-4), and had appended the Short Affidavit dated

February 1, 2006.  Short avers:

1. During the early morning of August 22, 2005, I shot Anthony Chastain at or near 1228 Manss Avenue in Price Hill, Cincinnati, Ohio.

2. On January 25, 2006, I entered a plea of guilty to Voluntary Manslaughter for causing the death of Anthony Chastain in Hamilton County Common Pleas Court, Case No. B0509825.

3. I know that Cameron McGlothin was charged in connection with the offense I committed. However, I personally know Cameron McGlothin did not ask, encourage or invite me to rob or shoot Anthony Chastain.

4. On Wednesday, January 18, 2006, I telephoned the attorney for Cameron McGlothin, Ms. Wende Cross and advised her that I wanted to testify on Cameron McGlothin's behalf at this trial. It was my intention to testify on his behalf on Friday, January 20, 2006. However, because I had not yet entered my plea and upon advice of my counsel, I exercised my Fifth Amendment right against self-incrimination.

5. During the investigation of this offense, I was interviewed by the police after the shooting occurred. I originally told the police that Cameron McGlothin was involved in the offense by asking me to rob Anthony Chastain. This was not true. I did this because I was told to do so by a person I know as Trigger.

6. If Cameron McGlothin is granted a new trial, it is my intention to testify truthfully on his behalf if called as a witness.

(Affidavit, Doc. No. 1-4, PageID 58-59.)  As noted above, the First District decided the new trial

motion on the basis of interpretation of Ohio Crim. R. 33(B).  That is, they found that evidence

which is **newly available** (because a co-defendant is no longer exercising his privilege against

self-incrimination) is not **newly discovered** for purposes of that Rule.  McGlothin only argued

the impact of the Short Affidavit to the First District in terms of Criminal Rule 33(B); he made

no constitutional "actual innocence" claim in the Ohio courts and the First District did not decide

any such claim on the merits.   Thus even if a stand-alone actual innocence claim were

cognizable, McGlothin defaulted that claim by failing to present it to the Ohio courts.

Moreover, the Short Affidavit is not sufficient proof of actual innocence to satisfy the

*Schlup* gateway standard to excuse procedural default on other Grounds for Relief.  The Sixth

Circuit has held:

> In determining whether an applicant has met the requirements for establishing a cognizable claim of actual innocence, we apply the same actual-innocence standard developed in *Schlup v. Delo*, 513 U.S. 298, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995), for reviewing a federal habeas applicant's procedurally defaulted claim. *Souter*, 395 F.3d at 596. Under the *Schlup* standard, as adopted in *Souter*, the petitioner "must show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 327; see id. at 329 ("[T]he standard requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do. Thus, a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."); see also *Souter*, 395 F.3d at 602. "[T]o be credible a gateway claim requires new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." *House v. Bell*, 547 U.S. 518, 126 S. Ct. 2064, 2077, 165 L. Ed. 2d 1 (2006) (internal quotation marks omitted). We must consider "all the evidence, old  and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." *Id*. (internal quotation marks omitted).

*McCray v. Vasbinder*, 499 F.3d 568, 571 (6th  Cir. 2007)(Sutton, J.).  The evidence against which

the Short Affidavit must be weighed was recited by the First District on direct appeal:

> [*P2]  On August 21, 2005, Anthony Chastain was robbed and fatally shot. At trial, the state's witnesses testified that McGlothin had arranged for the robbery of Chastain. Randall Patterson testified that McGlothin had told him that Chastain had money and had asked him to help rob Chastain. Patterson refused. Timothy Ridley testified that he was in McGlothin's house on the night of the shooting. Ridley stated that McGlothin had tried to talk him

and Kevin Short into robbing Chastain. According to Ridley, McGlothin knew that Chastain, who was a drug dealer, had a large amount of money, and McGlothin needed money to buy crack cocaine. McGlothin was also motivated to rob Chastain because he and Chastain had had an argument about a local prostitute. Ridley testified that he had not wanted to participate in the robbery, but that Short had.

[*P3]  Miranda Kramer, who lived across the street from McGlothin, saw the robbery and shooting. According to Kramer, in the early morning hours of August 22, Chastain arrived in a car in the front of McGlothin's house. McGlothin came out of his house and spoke with Chastain. Then Kevin Short ran up to Chastain, pointed a gun at him, and told him to remove his clothing. Short shot at Chastain, and McGlothin went to the ground. When Chastain ran away, Short chased him and continued to shoot at him. McGlothin got up, got into Chastain's car, and took the keys to the car. Kramer then saw McGlothin and other individuals searching Chastain's car. Gerald Akins testified that he had also seen McGlothin in Chastain's car.

[*P4]  After running away from Short, Chastain broke into a house that was a short distance from McGlothin's house. When the police arrived to investigate a report of a breaking and entering at that house, they found Chastain dead in the bathroom of the house.

[*P5]  McGlothin's neighbor, Charles Moore, testified that McGlothin had asked him to tell police that McGlothin had stayed at his house on the night of the robbery and shooting.

*State v. McGlothin*, *supra*.

The fact that Short was the actual shooter was part of the State's case against McGlothin, so Short's admission to that effect in the Affidavit is not new evidence. Short now says McGlothin did not procure his involvement, but he does nothing to refute the ample evidence that McGlothin was there at the scene and searched Chastain's car after Short shot him. While Short says McGlothin did not procure his involvement, he gives no reason to disbelieve Ridley's testimony about McGlothin's request. Short's admission to being the shooter came immediately after he pleaded guilty to a lesser offense and obtained the benefit of double jeopardy protection

21

from being convicted of murder.  Finally, Short's Affidavit shows he was willing to lie to the police to implicate McGlothin at the direction of someone called "Trigger," thereby undermining his own credibility as a witness.

In sum, the Short Affidavit does not satisfy the *Schlup* gateway actual innocence standard and therefore does not excuse any of McGlothin's procedural defaults on other constitutional claims.

McGlothin's Sixth Ground for Relief is not cognizable as a stand-alone claim and does not satisfy the *Schlup* gateway standard.  It should therefore be dismissed with prejudice.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous.

October 15, 2013.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).